## JOSEPH LYNAM et al. v. GEORGE LATIMER et al.

High Court of Errors and Appeals. October 18, 1821.

*Ridgely's Notebook III, 505.*

*Rogers* for plaintiffs in error. *McLane* and *Johns* for defendants. Latimer and others were plaintiffs below; Lynam and others defendants.

The plaintiffs in error relied upon the sixth error assigned, to wit, for that it appears by the bill of exceptions and record aforesaid that the jury aforesaid were sworn and affirmed to try the second and third issues aforesaid, whereas the said jury ought to have been sworn and affirmed to speak the truth of and upon the premises, or to render a true verdict according to their evidence.

On this *scire facias* there were four pleas: [(1)] *nul tiel record,* (2) payment, (3) satisfaction, (4) a special plea to which there was a demurrer.

The jury was sworn to try the pleas [of] payment and satisfaction.

By the Court. This judgment must be reversed. This mode of swearing the jury is more loose and erroneous than any other case which has come before the Court.

Note. There were many other errors assigned, but this alone was read or mentioned to the Court. The plaintiff in error relied upon it alone, and none other were heard or considered by the Court.

October 20, 1821. On motion of counsel for defendants in error, rule to show cause why the record in the above cause should not be remanded to the court below, and a *venire facias de novo* awarded.

The rule was argued in the High Court of Errors and Appeals, June 14, 1822. June 19, the rule made absolute, and the cause was remanded by the Court unanimously to the Supreme Court for final decision. The judges who remanded the cause were: Ridgely, Chancellor, Booth, C. J., and Cooper and Stout, Justices of the Court of Common Pleas. Johns, C. J., who sat in judgment below, said that he concurred in the opinion, though he could not sit in this Court on the question.[1]

June 19, 1822. The Chancellor. In these two cases, one of *Prudence Jones et al. v. Dehorty's Lessee,* the other of *Joseph Lynam et al. v. George Latimer et al.,* the judgments have been reversed because of the same error in both in the *jurata;* and in each the reversal is in favor of the defendants in the original causes, etc. The first is an action of ejectment brought by *Dehorty's Lessee v. Jones et al.,* the second a writ of *scire facias* brought on a mortgage by *Latimer et al. v. Lynam et al.* The question here is, whether these causes shall be remanded to the court in which the judgments that have been reversed were rendered, in order to [secure] a final decision; or whether they shall rest here on the reversals of the judgments. This question depends on the second section of the seventh article of the Constitution. If the court in which these causes were tried ought to have rendered any other judgment than such as they did, then this Court should, on these reversals, render such other judgment. Such is the mandate of the Constitution.

A great variety of judgments in this Court has been cited, but none of them has any bearing on the question except [——] [2] *v. Green,* which was exactly similar to these in all its parts on this question. In *Brown v. Latimer,* the first and oldest cause on the docket, the Court decided that the action would not lie

---

[1] At this point, *Ridgely's Notebook III, 505,* the account of this case is interrupted; it is resumed at *Ridgely's Notebook IV, 40.*

[2] Blank in manuscript.

and refused to remand the record. In *Redden and Davis v. Rogers, qui tam,* there was the same error as in these causes and a more important one, that is, that the declaration and the matters therein contained were not sufficient in law for the plaintiff in the original suit to have or maintain his action against Redden and Davis; and this Court gave an absolute and final judgment thereon. And the Court decided on the same principle in *Oslar v. Henderson's Lessee* on the record as it appeared to them, but not on the same point. These three last mentioned cases have no application to the question here depending because their circumstances, and the reasons upon which they were decided, were different.

Many other of the cases cannot be relied on in the decision now to be made, because the principles upon which they were decided are not known, and the facts are not recollected; and therefore I do not consider them as settling any rule for our government in these causes. But two cases have ever been brought under the solemn consideration of the Court. The first was *Fisher v. Harvey* in the year 1795; and the other was in this same cause between *Dehorty's Lessee and Jones.* What the question was in the first I know not; in the last it varied from the present question and is not applicable to it. Cases of bills of exceptions have been cited and relied on as furnishing just principles by which we should now decide; but all such cases depend upon their own particular circumstances and form no general rule proper to be applied to all others.

The determinations in the Supreme Court of the United States have been particularly pressed upon us, because the provision in the "Act to establish the judicial courts of the United States," s. 24, 2 U.S. Laws 65, and our constitution are the same. These cases, so far as they are like the present, or as they establish any principle proper to be applied, deserve great respect. They are not authorities, but they justly merit the confidence of this Court, and without some very forcible contrary impression on my mind, I shall on all occasions be willing to abide by them. *Walden v. The Heirs of Gratz,* 1 Wheat. 292, was an action of ejectment. A verdict was found for the plaintiff. The defendant below brought the writ of error. At the trial, a bill of exceptions was taken by the defendant below to the charge of the court on a question of possession. The Supreme Court reversed the judgment and remanded the cause with directions to award a new trial. In that case, it being a question whether the possession of the defendant below was such as barred the plaintiff, and the court below having erred, and a verdict being found for the plaintiff below, the Supreme Court could not render a judg-

ment for the defendant against the verdict, nothing appearing on the record to bar the plaintiff's recovery which the court could decide. That was not a reversal in favor of the plaintiff in the original cause, and yet they could not render a judgment for the defendant below. The case did not come within the Judiciary Act and is totally unlike the present, and is not a precedent for the decision of these causes. *Bingham v. Cabbot,* 3 Dall. 19, does not apply, because the court below had not jurisdiction. In *Laidlaw v. Organ,* 2 Wheat. 178, 195, there was a verdict and judgment for the original plaintiff. The cause was carried into the Supreme Court on a bill of exceptions taken by the defendant, and the judgment was reversed on the absolute instructions of the court to the jury, the question upon which the case depended (a question of fact) not having been submitted to the jury. The Supreme Court could do nothing else than award a *venire facias de novo,* because the court [below] not instructing the jury, and charging the jury to find for the plaintiff, there was no fact on the record by which they could infer the law.[3] *Lanusse v. Barker,* 3 Wheat. 102, 147, was a reversal in favor of the original plaintiff, and the court said they could do no more than order a *venire facias de novo,* and they certainly could not, for the damages were uncertain, and the Judiciary Act of the United States had expressly provided that such case should be remanded for final decision. The cases 6 Cranch 70, 6 Cranch 253, 9 Cranch 122, do not apply, for neither the facts nor the principal reasons upon which the court remanded the records are similar to *Dehorty's Lessee v. Jones* and *Lynam v. Latimer.*

Two cases have occurred in this Court in which the proper distinction in bills of exceptions are to be found. One is *Noxon v. Harris,* cited at the bar; the other *John Atky Pennington v. Clark.* In the former, the court in which the cause was tried allowed the survey, made by the surveyor appointed to lay down the plaintiff's pretensions in an action of ejectment, to be given in evidence without proof of the same. A bill of exceptions was taken by the defendant below, and after judgment for the plaintiff, the defendant below brought a writ of error, and the judgment was reversed, and the record was remanded for a final decision. This Court could not render a final judgment for the defendant below, for there was nothing in the record to show that the plaintiff below could not recover. A verdict in favor of the plaintiff had been rendered upon improper evidence; and

---

[3] In the manuscript this sentence reads, "The Supreme Court could do nothing else than award a *venire facias de novo,* because the court in not instructing the jury, and in charging the jury to find for the plaintiff; and there was no fact on the record by which they could infer the law."

there was no fact in the record by which this Court could conclude the rights of the parties. *Pennington v. Clark* was a writ of error brought in an action of trespass *quare clausum fregit.* Clark was the original plaintiff. He had never had possession of the land, and therefore could not sustain the suit. This Court reversed the judgment below and rendered an absolute judgment for the defendant below. It would have been fruitless to remand the cause, when it was apparent upon the face of the record that the plaintiff below could not maintain his action, and when that was the very point determined by this Court.

In *Moystyn v. Fabrigas,* Cowp. 161, on a writ of error in the King's Bench, the question arose on a bill of exceptions whether trespass and false imprisonment lies in England by a native Minorquin against a Governor of Minorca for such injury committed in Minorca. It was adjudged that such action did lie, and the judgment was affirmed; but if a contrary decision had been made, the court must have reversed the judgment and given judgment that the plaintiff below should take nothing by his bill, and that the defendant go without day. It would be absurd to order a *venire facias de novo* to try a cause which a superior court had adjudged could not be maintained. In this case, as well as in *Pennington v. Clark,* the question of law appeared on the bill of exceptions.

In these and in all similar causes, the first consideration of this Court should be, after a reversal, to ascertain what judgment the court in which they were tried ought to have given. The errors were in improperly swearing the juries; and as they were improperly sworn, they were not sworn at all, and the verdicts were consequently found without any oath, in point of law. Such a verdict is no verdict, and the court who originally tried the causes ought to have ordered new trials.

In 6 Co. 14, Arundel was indicted for murder. The jury was returned, *de vicineto civitatis Westmonasteriensis.* It was moved in arrest of judgment that the venue ought to have been out of the parish, and not out of the city. The court adjudged that the trial was insufficient, and awarded a *venire facias de novo.* 8 Co. 65b, *Loveday's Case;* this was an information *qui tam* in the Exchequer upon the Statute of Usury. The jury gave an imperfect verdict, and the court awarded a *venire facias de novo.* Another jury was returned, and when they were ready to give their verdict, the plaintiff was nonsuited, upon which judgment was rendered. A writ of error was brought in the Exchequer Chamber, and the error alleged was that the court had granted a *venire facias de novo.* It was held to be no error, and that if a verdict be so imperfect that judgment cannot be giv-

en on it, then the court shall award a *venire facias de novo*. In *Cook v. Laneday,* Cro.Jac., in the Exchequer, the jury did not render a verdict on the whole issue, and it was resolved that the verdict was void; wherefore a *venire facias de novo* was awarded. Error was brought that a *venire facias de novo* should not have been awarded, but a *distringas juratorum de novo;* but it was clearly held that the *venire facias de novo* was right, and the judgment was affirmed. And in *Langley v. Payn,* Cro.Jac. 627, an imperfect verdict was held to be void and as no verdict and that it was right to award a *venire facias* for the trial of that which was imperfect. In *The King v. Sykes,* Ld.Raym. 202, on an information for perjury, the record of the trial wherein the defendant was alleged to be perjured was produced, and it varied from the allegation in the information. This the jury found specially; and it was afterwards resolved that jury could not have cognizance of a variation between the record and information, but that the court ought to have determined it. A *venire facias de novo* was therefore awarded. To these cases of imperfect or void verdicts may be added 2 Bulst. 29, 2 Ld. Raym. 1521.

In the King's Bench, in the celebrated case of *The King v. Woodfall,* 5 Burr. 2661, on an imperfect verdict where the cause was tried on an issue in that court, a *venire facias de novo* was awarded. In *Hooper v. Shepherd,* 2 Str. 1089, where a judgment was reversed because the verdict was imperfect, the Court of King's Bench did not award a *venire facias de novo;* but in *Parker v. Wells,* 1 Term 783, on the reversal of a judgment rendered, when the finding of a jury was not sufficient that a final judgment should be given thereon, a *venire facias de novo* was awarded. These cases show what should be done on imperfect or void verdicts by the court who tried the cause, and what was actually done in the House of Lords on the opinion of all the judges. In England, such, according to the case in Term, I apprehend, is now the settled course.

Now, I cannot distinguish between the cases under consideration and those in the English books which I have just cited. Here the juries were not authorized to try the causes, and their verdicts were not merely imperfect but were void, and consequently there were no trials of the issue in the respective causes, and instead of final judgments, a new trial should have been ordered in each case.

There are three cases in Wilson which also very satisfactorily show the course that should have been taken in the court where these causes were tried. The first is *Crowdon v. Rook,* 2 Wils. 144, where it appeared by the record that a trial was had after

the day of *nisi prius*. A verdict was found for the plaintiff, who afterwards moved to amend the *habeas corpora,* and the *jurata;* and the defendant moved to set aside the verdict. The court were clearly of opinion that the trial was *coram non judice,* and that the amendment could not be made; but that they ought, *ex officio,* to order a *venire de novo* to be awarded, which was ordered accordingly. The next is *Eichorn v. Le'maitre,* 2 Wils. 367, where it was adjudged that an issue on a plea in abatement being found against the defendant, the judgment should be peremptory, and that a writ of inquiry should not be awarded to supply the omission of the jury in not finding damages, but that a *venire facias de novo* must go. And in *Drage v. Brand,* 2 Wils. 377, on debt for a penalty in articles it was resolved that the jury ought to assess damages upon the breach assigned according to the Statute 8 & 9 Will. III, c. 10, and should not find the debt; therefore a *venire facias de novo* was awarded, the verdict being defective.

Upon the reason of the thing, and upon these authorities, I have no hesitation in saying that if the defect in these causes, *Dehorty's Lessee v. Jones,* and *Lynam v. Latimer,* had been discovered before the judgments were rendered, that the Court ought and would have ordered new trials; and consequently the Court will render the same judgment which the court below ought to have done. The word "judgment" is used in the Constitution, but by that, I apprehend, the final sentence or judgment of the court is not to be understood in all cases, but such judgment as the court should give according to the circumstances of the cause. The order of a new trial would be the judgment of the court, for upon the error being discovered, the court could not have given a final judgment, the verdict being void. I therefore think that this Court should in each case order the cause to be remanded in order to [reach] a final decision.

*Green's Case* was unfortunate in not being brought under the solemn consideration of the Court. That I erred in joining in the reversal of the judgment without remanding the cause for a final decision, I willingly acknowledge. And I think it the duty of a judge, and honorable to him as a man, when he discovers his mistake, and the same case comes into revision, to acknowledge and retract his error. This case might easily be accounted for,[4] but it is now unimportant, as the decision is here-

---

4 Footnote by Ridgely, "There was no argument in *Green's Case* upon this point. The principal question was decided on the reason of the thing, it being apparent upon the record that the jury had not been properly sworn; and upon Cro.Jac. 119, 207, Andr. 160. The writs of error in Croke were in the Exchequer Chamber; and in Andrews it was directed to a court of inferior

by corrected, and as Mr. Green has since, on a second suit, recovered the land without any material inconvenience or loss.

PER CURIAM, unanimously. Causes remanded for a final decision.

These causes were heard and decided by RIDGELY, CHANCELLOR, BOOTH, Chief Justice of the Court of Common Pleas, and COOPER and STOUT, Justices of the same court. JOHNS, Chief Justice of the Supreme Court, who had rendered judgment in that court, in each of them before removal, and did not sit judicially upon the hearing in this Court, authorized THE CHANCELLOR to say that he concurred in the judgment of this Court in remanding these causes for a final decision. No other judge of the Supreme Court was in attendance.

---

jurisdiction. In these cases the judgments were reversed only; and it did not occur to the Chancellor that the Exchequer Chamber, by Statute, 27 Eliz.. c. 8, affirms or reverses only (except perhaps on special verdict. See 1 Salk. 403); and that on writ of error to a court of inferior jurisdiction, the superior court does not award a *venire facias de novo.* 1 Term 151."